# Law Office of Thomas R. Ashley

### Robert Treat Center
### 50 Park Place, Suite 1400
### Newark, New Jersey 07102
### Tel: (973) 623-0501
### Fax: (973) 623-0329

January 18, 2022

Hon. Brian R. Martinotti                          VIA ECF ONLY
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re:  UNITED STATES v. WALEED DOZIER
     Case No. 2:19-mj-07571

     DEFENDANT'S BRIEF IN SUPPORT OF
     MOTION TO INVALIDATE SEARCH WARRANT OR IN
     THE ALTERNATE, TO CONDUCT A FRANKS HEARING

Dear Judge Martinotti:

In reference to the above pending criminal matter this

office represents the defendant Waleed Dozier.

In lieu of formal brief please accept the within letter-

brief in support of defendant's motion, dated November 22, 2021

("motion"), which seeks an order pursuant to Federal Rule of

Criminal Procedure ("FRCRP") 41(h) invalidating SEARCH WARRANT

Mag. No. 19-7567 and suppressing the physical evidence seized on

or about December 19, 2019 from 84 Willoughby Street, Basement,

Newark N.J., on the grounds that (1) the affidavit and

1

application filed by the Government to procure the search warrant contained statements that were knowingly false or made with reckless disregard for the truth triggering the exclusionary rule, (2) that the search warrant failed to particularly describe the premises to be searched as required by the Fourth Amendment to the United States Constitution, and (3) that the search warrant fails to comply with FRCRP 4.1(b)(6); in the alternate, defendant request the Court conduct a hearing pursuant to Franks v. Delaware, 438 U.S. 156 (1978), at which the Government would produce Special Agent Laura Tuteral ("SA Tuteral") to proffer the source of the information in the relevant affidavits contradictory to evidence now before this Court.

PROCEDURAL/FACTUAL STATEMENTS

On or about December 18, 2019, search warrants Mag. No. 19-7250-52 were issued for a 2006 Audi A6; 61 Vorhees Street, Upstairs Unit, Newark, N.J. ("premises one"); and 84 Willoughby Street, First Floor, Newark N.J. ("premises two") respectively. On December 19, 2019, all three search warrants were executed. Upon execution, law enforcement failed to recover any contraband from any of the target locations.

On or about December 19, 2019, SA Tuteral, of the Federal Bureau of Investigation, applied telephonically to expand the scope of the aforementioned warrants. The telephonic

attestations were supported by a nineteen-page written affidavit ("DA"; Mag. No. 19-7566-7) requesting issuance of a search warrants for a garage at premises one ("the garage") and a basement apartment at premises two ("the basement"). See DA Attachment A2.

As is relevant herein, in her affidavit SA Tuteral states that there is probable cause existing to issue search warrants for the basement and the garage based on the following:

1. An alleged conversation between Mr. Dozier's wife, Jovani Purvis ("Mrs. Purvis"), and law enforcement at premises one where she indicated that the Defendant often went into the garage prior to entering the home; and

2. An attestation that residents of premises two informed law enforcement that Mr. Dozier is often seen accessing the basement apartment. Id.

In large part the affidavit states and recounts the surveillance of Mr. Dozier and others over a span of several months. This surveillance is said to have captured the Defendant travelling between different locations and various controlled narcotics transactions.

Notably, prior to the December 19, 2019, there is no mention of either the basement or the garage. The above are the sole allegations connecting the Defendant to these specific locations. Should these alleged conversations be excised, there

is no basis in fact or in law to conclude or even suspect Mr. Dozier of being able to exercise dominion and control over the basement or the garage.

Search warrants Mag. No. 19-7566-7 for the basement and the garage appear to have been issued by the Honorable Cathy Waldor on December 19, 2019. However, the written affidavits in support thereof as well as the warrants themselves are not signed by the Magistrate Judge per the requirement of FRCRP 4.1(b)(6). Upon execution of the warrant for the garage, no contraband was recovered. The execution of the search warrant for the basement netted a handgun, suspected narcotics, and other items believed to be narcotics paraphernalia.

In the annexed certifications, Sharon Strickland ("Ms. Strickland"), a resident of premises two, and Mrs. Purvis repudiate and contradict each and every aspect of the conversations law enforcement claims to have had with them connecting the Defendant to the basement and the garage:

1. Specifically, Ms. Strickland proffers that her apartment door was forcibly opened by members of law enforcement with guns drawn who then proceeded to search her residence before threatening her with arrest and taking custody of her children. She recalls that upon completion of the search with negative results, she was approached by two officers with a picture of Mr. Dozier. At this time, Ms. Strickland told the

officers that she did not know the Defendant, nor had she ever observed him enter or exit the basement.

2. Mrs. Purvis attests that there was not an occasion on which she said to any member of law enforcement that Mr. Dozier ever used the garage to enter premises one.

Search warrant Mag. No 19-7567 authorizes a search of premises two as particularly described in Attachment A2 thereto. Attachment A2 describes, "the first floor of a two story building," as the location to be searched and makes no mention of the basement.

Legal Argument

Point I

THE ATTESTATION BY MS. STRICKLAND THAT THE DEFENDANT WAS NOT KNOWN TO HER AT THE TIME OF THE SEARCH AND THAT SHE HAS NEVER SEEN HIM ENTER OR EXIT THE BASEMENT, NEGATES THE EXISTENCE OF PROBABLE CAUSE FOR PREMISES TWO.

Defendant Dozier submits that the motion to suppress should be granted because, inter alia, the search warrant was not supported by probable cause. Specifically, Defendant contends that in attempting to establish probable cause for a search of premises two the only purported evidence is a now refuted statement.

There is, "a presumption of validity with respect to the affidavit supporting," a search warrant. Franks at 171. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere

desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id.

The facts set forth in the affidavit of Ms. Strickland are such that for them to be summarized as linking the Defendant to the basement would constitute a deliberate falsehood or at least a reckless disregard for the truth. The Government may insist that Ms. Strickland is not the resident referred to in the affidavit in support of the search warrant for premises two, but in the absence of them producing another resident such a conclusion cannot be reached. Ms. Srickland is the only resident of premises two who can be positively identified as having communicated with law enforcement on the day of the search.

"If these requirements as to allegations and offer of proof are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required, but if the remaining content is insufficient, the defendant is entitled

under the Fourth and Fourteenth Amendments to a hearing."
Franks at 154.

Here, absent the alleged statement by a resident that the
Defendant had been seen entering and exiting the basement there
is no evidentiary item connecting him to the basement. In the
months of surveillance, Mr. Dozier was never connected to the
basement in any way. The confidential informant with respect to
this investigation never made any statements linking the
Defendant with the basement. There is not a single mention of
the basement in that affidavit in support of the search sans the
alleged conversation with an unidentified resident.

"[A]ssertions can be made with reckless disregard for the
truth even if they involve minor details—recklessness is
measured not by the relevance of the information, but the
demonstration of willingness to affirmatively distort truth."
Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000). In this case,
the claims associating Mr. Dozier with the basement are both
highly relevant and are clearly demonstrative of an affirmative
distortion of the truth considering Ms. Strickland's affidavit.

The Government will likely cite United States v. Leon, 468
U.S. 897 (1984), and argue that the exclusionary rule should not
apply because law enforcement, "acted in the objectively
reasonable belief that their conduct did not violate the Fourth
Amendment. Id. at 918. However, this theory fails since the

officers performing the search also searched Ms. Strickland's apartment and knew that she made no statements linking Mr. Dozier to the basement. In fact, this is exactly the kind of situation in which the exclusionary rule should rightfully be invoked since there is no basis for officers to reasonably conclude that the Defendant was ever in the basement.

Although there are well recognized limits on the application of the exclusionary rule, it should be employed for, "cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct. Id. at 910. Surely, the complete misrepresentation of law enforcement's conversation with Ms. Strickland is misconduct that warrants its use here.

Further support for use of the exclusionary rule and bad faith on the part of law enforcement is that the misconduct was not limited to the distortions of Ms. Strickland's words. The conversation between Mrs. Purvis and law enforcement was also perverted to provide a basis to expand the scope of the search of premises one. Also, neither expanded warrant was signed. To date the Defendant has no way of verifying if these documents were endorsed by a judicial officer as is required. "[T]he exclusionary rule is designed to deter police misconduct," and therefore should be applied here. Id. at 916.

Point II

THE EXPANDED SEARCH WARRANT FOR PREMISES TWO IS INVALID AND
RENDERED FACIALLY DEFICIENT BY FAILING TO PARTICULARLY DESCRIBE
THE PLACE TO BE SERACHED AS IS REQUIRED BY THE FOURTH AMENDMENT.

It is well established that a search which relies on a
warrant that fails to meet the particularity requirement is
unconstitutional. Groh v. Ramirez, 540 U.S. 551, 559 (2004).
("The uniformly applied rule is that a search conducted pursuant
to a warrant that fails to conform to the particularity
requirement of the Fourth Amendment is unconstitutional.")
(internal quotations omitted).

"Consistent with the fourth amendment's dictate that
warrants particularly describe the place to be searched, a
search warrant directed against an apartment house will usually
be held invalid if it fails to describe the particular apartment
to be searched with sufficient definiteness to preclude a search
of other units located in the building and occupied by innocent
persons." United States v. Bedford, 519 F.2d 650, 653–55 (3d
Cir. 1975). Here, this is unquestionably the case as the
apartment of Ms. Strickland was not only entered but was
thoroughly searched as well. Although the affidavit describes a
first floor apartment, a thorough reading does not indicate the
basis for the identification of that unit. Nor does it allege
any connection between Mr. Dozier and the basement unit besides

the now controverted claims that a resident provided that information.

The absence of a description of any particular unit at premises two in the underlying affidavit supports the Defendant's assertion that these warrants were general, exploratory, and unconstitutional. It begs the question; how could law enforcement complete a search of Ms. Strickland's apartment without realizing that it was the wrong location? Law enforcement fails to set forth any plausible rationale for how any specific unit inside the dwelling was identified as the target location.

This case is not like others where the description of the location in the warrant was such that an officer could, "with reasonable effort ascertain and identify the place intended. Steele v. United States, 267 U.S. 498, 503 (1925). Here, it is a virtual impossibility that a member of law enforcement performing the search could interpret, "the first floor of a two story building," to mean the lowest of three levels and the basement of the home. See DA Attachment A2. The description of the place to be searched was not modified in the issuance of the expanded warrant. Therefore, it is theoretically impossible that the initial search warrant (Mag. No 19-7252) and expanded search warrant (Mag. No 19-7567) sought to authorize the search of two different units by a singular description.

A consequence for violating the Fourth Amendment is the so-called exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." <u>Leon</u> at 906 (quoting <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974)). Functionally, the rule provides that evidence which is the fruit of an illegal search must be suppressed.

The exclusionary rule, "enabl[es] the judiciary to avoid the taint of partnership in official lawlessness," and "assur[es] the people — all potential victims of unlawful government conduct — that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government." <u>Calandra</u> at 357. Ms. Strickland is one such victim of unlawful conduct, suffering the threat of arrest, removal of her children, and destruction of her property as a result of the failure to particularly describe the premises to be searched. Without an exclusionary rule, the Fourth Amendment "is of no value, and ... might as well be stricken from the Constitution." <u>Weeks v. United States</u>, 232 U.S. 383, 393 (1914).

The Government will set forth that even if the search is rendered unconstitutional for failing to meet the particularity requirement, that the good faith exception to the exclusionary rule applies here. However, its application is not proper because

there is evidence before the Court of multiple knowing misrepresentations that supported the application for the relevant search warrants.

To determine whether the good faith exception applies, the Court must, "consider (1) the extent to which the violation in this case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation." United States v. Jackson, No. 3:19-CR-0015, 2021 WL 27458, at *9 (D.V.I. Jan. 4, 2021).

In the instant matter, the alleged violation (1) violated the exact purpose of the Fourth Amendment's particularity requirement in that an innocent person's home was destructively searched and (2) resulted in a substantial material gain to the government insofar as they were able to search a unit that had not been previously ascertained or authorized resulting in the recovery of a significant amount of narcotics. It should be noted that the Government would rely on a theory of constructive possession to attribute the narcotics to Mr. Dozier and that this was not his place of abode or domicile.

It is submitted by counsel that the search warrants are unconstitutional as presented hereinabove, the good faith exception does not apply, consequently the exclusionary rule is triggered, and the evidence must be suppressed.

Point III

THE SEARCH WARRANT'S NONCOMPLIANCE WITH FRCRP 4.1(b)(6) WAS NOT REASONABLE UNDER THE CIRCUMSTANCES WHEN THE UNDERLYING AFFIDAVIT HAD A DUPLICATE DESCRIPTION OF THE SUBJECT PREMISES AND MULTIPLE KNOWING MISREPRESENTATIONS OF FACT ESSENTIAL TO THE ISSUANCE OF EXPANDED WARRANTS.

FRCRP 4.1(b)(6) provides that to issue a warrant, "the judge must: (A) sign the original documents; (B) enter the date and time of issuance on the warrant or summons; and (C) transmit the warrant or summons by reliable electronic means to the applicant or direct the applicant to sign the judge's name and enter the date and time on the duplicate original." In this case, these requirements have not been met with respect to the search warrant that is alleged to have authorized the search of premises two. The original documents bear no signature of a judge, time, or signature of another person directed to sign in place of the judge.

Pursuant to FRCRP 4.1(c), upon a finding of bad faith, evidence may be suppressed for noncompliance with the provisions of FRCRP 4.1(b)(6)(A)-(C). Here, the Defendant submits that bad faith can be infered because a reasonable judge could not sign the warrant applications as they were prepared. A judge or magistrate exercising due diligence would have noticed that the premises identified in search warrant Mag No. 19-7567 was identical to that of Mag. No 19-7252. As has been previously presented, two warrants to search a location with the same

13

description cannot plausibly lawfully authorize the search of two different places.

Even if the Government produced a search warrant Mag. No. 19-7567 now with the requisite signature, it would produce more questions than answers. Primarily, how could an unsigned version have been produced in discovery significantly after the search and when was it signed. Under the facts presented herein, it is submitted that there is no circumstance in which it could have been reasonable for these warrants to be totally noncompliant with the rules cited above. Therefore, the exclusionary rule applies, and the evidence must be suppressed.

<u>Conclusion</u>

""Ordinarily, the 'mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith.'" <u>United States v. Stearn</u>, 597 F.3d 540, 561 (3d Cir.2010) (quoting <u>United States v. Hodge</u>, 246 F.3d 301, 307—08 (3d Cir.2001)). Yet there are situations "in which, although a neutral magistrate has found probable cause to search, a lay officer executing the warrant could not reasonably believe that the magistrate was correct." <u>Id</u>. Those four "rare circumstances" occur when:

(1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;

14

(3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." <u>United States v. Pavulak</u>, 700 F.3d 651, 663—64 (3d Cir. 2012).

The case of Mr. Dozier squarely fits into the first and fourth exceptions set out above and a colorable argument can be made for the third exception as well. As submitted herein, the issuing magistrate relied on affidavits that are now known to contain claims that were either knowingly false or made with a reckless disregard for the truth. Further, there is no question that a warrant to search the first floor apartment is facially deficient to authorize a search of the basement of a multi-unit dwelling.

Even in the absence of the new evidence set forth from Ms. Strickland and Mrs. Purvis, the affidavits in support of the search warrant alleged to be for the basement of premises two fails to claim that any person observed any indicia of criminal activity with respect to the basement unit. The bare allegation that Mr. Dozier was present there would not establish probable cause to support a search warrant.

Therefore, because (1) the affidavits in support of the search of premises two were made with reckless disregard for the truth, (2) DA Attachment A2 fails to satisfy the particularity requirement of the Fourth Amendment, (3) search warrant Mag. No. 19-7567 is not compliant with FRCRP 4.1(b)(6)(A)-(C), and (4) the good faith exception does not apply, the Court should invoke the exclusionary rule and suppress the evidence; or in the alternate, Defendant requests that the Court conduct a hearing pursuant to <u>Franks v. Delaware</u> to compel testimony from the Government affiant.

Respectfully submitted,

*MICHAEL T. ASHLEY, ESQ.*

C:   AUSA E. Spiro

Mr. W. Dozier

16